# Exhibit A

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | SIXTEENTH JUDICIAL CIRCUIT |
| COUNTY OF YORK | ) | |
| | ) | |
| Verderia Stockman, | ) | C.A. No.: 2020-CP-46- |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **SUMMONS** |
| Express Scripts, Inc., | ) | (Jury Trial Demanded) |
| | ) | |
| Defendant. | ) | |
| | ) | |

## TO THE DEFENDANT NAMED ABOVE:

A lawsuit has been filed against you. Within thirty (30) days after service of this Summons on you (not counting the day you receive it), you must file with the court and serve on the Plaintiff, through the undersigned attorneys, an answer to the attached Complaint or a motion under Rule 12 of the South Carolina Rules of Civil Procedure. If you fail to do so, judgment by default will be entered against you for the relief demanded in the Complaint.

**JORDAN LAW FIRM, P.C.**
*s/D. Bradley Jordan*
D. Bradley Jordan (SC Bar #15288)
bradjordan@comporium.net
546 East Main Street
Rock Hill, SC 29730
(803) 817-7999 (Tel) / (803) 817-9704 (Fax)

June 6, 2020

Rock Hill, South Carolina

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | SIXTEENTH JUDICIAL CIRCUIT |
| COUNTY OF YORK | ) | |
| | ) | |
| Verderia Stockman, | ) | C.A. No.: 2020-CP-46- |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **COMPLAINT** |
| Express Scripts, Inc., | ) | (Jury Trial Demanded) |
| | ) | |
| Defendant. | ) | |
| | ) | |

The Plaintiff, Verderia Stockman, ("Plaintiff"), brings this action against the Defendant, Express Scripts, Inc., ("Defendant"), based on the allegations set forth below.

## PARTIES

1.    Plaintiff is a citizen and resident of the Clover, York County, South Carolina.

2.    Upon information and belief, Defendant is a corporation incorporated under the laws of a state other than South Carolina with its principal place of business in St. Louis, Missouri and doing business in York County, South Carolina.

## JURISDICTION AND VENUE

3.    This Court has subject-matter jurisdiction over the claims in this lawsuit under Article V § 11 of the South Carolina Constitution and South Carolina Code § 14-5-350.

4.    This Court has personal jurisdiction over Defendant because, upon information and belief, it is doing business in York County, South Carolina.

5.    Venue is proper under South Carolina Code §§ 15-7-20 and 15-7-30.

6.    Plaintiff has exhausted her administrative remedies and received a Notice of Suit Rights from the U.S. Equal Employment Opportunity Commission (EEOC) on or about March

1

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

17, 2020. This lawsuit is being filed in a timely manner, within ninety (90) days from the date on which Plaintiff received a Notice of Suit Rights concerning her claims.

## FACTS

7.     Plaintiff is an African American Female and a Veteran who served in the United States Marine Corps and was stationed at Parris Island during the Gulf War.  As a result of her time in the service, Plaintiff has a disability affecting her mental health, namely a diagnosis of Post-Traumatic Stress Disorder.

8.     This diagnosis and medical condition substantially limits one or more major life activities.  It affects her ability to sleep, affects her memory, causes her stress, anxiety and other symptoms including migraines thereby affecting her ability to function in all major life activities during the migraine.  These symptoms can be triggered by various things.

9.     Plaintiff was first employed by Defendant on or about June 19, 2009 as a Patient Care Advocate. As part of the training process, the employer required all employees who were in the Patient Care Advocate position to listen to tapes of prior calls for coaching purposes.

10.     Shortly after that time, Plaintiff made her supervisor and employer aware that listening to coaching tapes of her own voice caused her anxiety and stress.  The Defendant employer accommodated her by not requiring this aspect of coaching.

11.     In or about April 2018, a new item was added to the metrics which required Plaintiff to offer certain products that were available.  Employees were only supposed to offer the products when it was the actual patient or patient representative that called in and not a third party.  Plaintiff's supervisor, Aaron Johnson, made her aware that her numbers for this metric needed to be improved.  Plaintiff had only been offering the products when it was the actual patient or patient representative calling, but the supervisor instructor Plaintiff to offer the

2

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

available products on every call no matter whether it was the patient, patient representative, or a third party. Plaintiff complied with this instruction and her numbers improved.

12.     In or about June 2018, Plaintiff was assigned to a new supervisor, Audrey Peterson. In late June, early July 2018, Plaintiff had a meet and greet with the new supervisor, Audrey Peterson via phone. This was approximately 2 weeks after she became Plaintiff's supervisor. During the conversation she informed Plaintiff that she was a very aggressive supervisor, and also mentioned that she would be having coaching sessions with Plaintiff. She informed Plaintiff that during those sessions Plaintiff would be listening to previous calls that Plaintiff had received.

13.     At that time, Plaintiff informed the supervisor that she felt uncomfortable listening to the calls. Plaintiff explained that she had not been listening to calls prior to Ms. Peterson becoming her supervisor. The supervisor responded by informing Plaintiff that employees do not dictate how coaching goes and that Plaintiff would be listening to the calls. Plaintiff informed her that she had not been required to listen to the calls before. The supervisor repeated what she previously said that employees do not get to dictate how coaching goes. She told Plaintiff that all Patient Care Advocates (PCAs) undergo weekly coaching sessions. Plaintiff told her at that time that she felt uncomfortable listening to her calls.

14.     In late July 2018, Plaintiff's coaching sessions with the supervisor, Audrey Peterson began, and they were on Tuesdays. Plaintiff was still receiving the coaching session alerts via Instant Message for Wednesday sessions Plaintiff had with her previous supervisor, Aaron Johnson.

15.     Plaintiff contacted the supervisor, Audrey Peterson and asked her if she could remove the alert that she was receiving for her meetings with the prior supervisor on

3

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

Wednesdays. During the conversation Plaintiff shared her screen with her and she did some things and thought she removed the Wednesday alert from Plaintiff's calendar.

16.    The following week Plaintiff received the alert for Wednesday again and she reached out to the supervisor, Audrey Peterson again for help. During that interaction Audrey informed Plaintiff that she did not understand why Plaintiff could not remove it since Plaintiff had added it to her calendar. Plaintiff informed Audrey that the alert was added by someone else and not Plaintiff.

17.    The supervisor, Audrey Peterson insisted that it had to be Plaintiff who added it to her calendar. Plaintiff informed Ms. Peterson that she did not know how to add it to the calendar and that she was not able to add any recurring alerts to her calendar. The supervisor was unable to remove it during the interaction but ultimately the alerts for the wrong day of coaching stopped.

18.    In or about August 2018, Plaintiff had a conversation with the supervisor, Audrey Peterson about a call. During the conversation, the supervisor asked Plaintiff about the details of the call. Plaintiff informed her that she could not remember. As mentioned above, the loss of memory is a symptom of her PTSD. The supervisor began yelling at her saying in the form of a chant "I don't play with employees". Plaintiff said that she was doing her best and then the supervisor yelled, "This is not your best". Audrey Peterson went on to tell the Plaintiff during the same call that "There is nothing wrong with you".

19.    On August 14, 2018, after the call where Audrey Peterson yelled at Plaintiff, the Plaintiff spoke to Elaine Dye from HR concerning her anxiety. Ms. Dye asked that she provide medical documentation of her disability proving that she was unable to listen to the calls and

Plaintiff was told that the company would be sending her a package of the documentation needed.

20.     On the same call Plaintiff also reported to Elaine Dye about the troubling and demeaning call she had with Audrey Peterson.  Plaintiff asked HR if they had heard the call. Elaine Dye became silent which Plaintiff believe that she in fact had heard the call and what Audrey Peterson had said to Plaintiff.

21.     Upon information and belief, no one from HR ever investigated the call and Audrey Peterson was never reprimanded or punished.   Also, during the call Elaine Dye repeated what Audrey Peterson had stated to Plaintiff that employees do not dictate how coaching goes.

22.     Upon information and belief, Audrey Peterson and HR had already spoken concerning Plaintiff and her request for accommodation.  Plaintiff felt that her supervisor and HR were colluding against her and discriminating against her due to her disability. Plaintiff felt that HR was supposed to be neutral and seek equal and fair treatment for all employees.  Instead, HR failed to protect Plaintiff or advocate for her accommodation with her hostile supervisor. Instead Express Scripts continued to protect and foster Audrey Peterson's behavior toward Plaintiff.

23.     On or about August 2018, after speaking with HR and notifying them about her anxiety issues, Plaintiff received a package from the company with the documents for her doctor to complete. Plaintiff contacted Veterans Affairs as soon as she received the forms to make an appointment with her doctor.  The earliest appointment that she could get was on September 27, 2018.  Plaintiff contacted HR by email and informed them about the date of her appointment.

24.     Sometime in August or September 2018, a few weeks later and prior to Plaintiff's scheduled doctor's appointment for her FMLA and disability accommodation, Plaintiff received

5

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

an email from HR about her medical documentation informing her that the case/complaint was closed. HR did not wait for Plaintiff to be able to see her doctor or submit documentation.

25.     Plaintiff responded to the email and explained that she had not been seen by the doctor yet and was told the case/complaint could be reopened at a later date once the information was received.

26.     On or about September 18, 2018, during another coaching session, Audrey Peterson forced Plaintiff to listen to another call even though it was well documented that Plaintiff did not have to listen to calls as per the approvals of her previous supervisors and Ms. Peterson had been informed that listening to calls made Plaintiff uncomfortable. In the nine years prior, the Plaintiff was never asked about her medical history or asked to provide documentation to prove said issue(s).

27.     After the call was played Audrey Peterson began to ask questions about the call, but whenever Plaintiff is stressed or feels anxious, she has issues with memory.

28.     Plaintiff told Audrey Peterson that she did not remember the call information but tried her best to respond to her questions. Plaintiff's responses were not suitable to Audrey Peterson. After the coaching session, Audrey Peterson informed Plaintiff that she was being written up for insubordination. Plaintiff was told it would appear on her file in a couple of days and that she would contact Plaintiff when it was available for review.

29.     On or about September 24, 2018, Plaintiff contacted HR and let them know about prior incidents where Audrey was yelling and berating Plaintiff. Plaintiff spoke to a man in HR who took down the grievance information that Plaintiff filed against Audrey Peterson and HR. Upon information and belief, the information was forwarded to HR and Michelle Welsby, who is with HR at corporate.

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

30.    In late September 2018, approximately a week later, Michelle Welsby contacted Plaintiff regarding her grievance.  Plaintiff explained to her that when she listens to calls, she feels anxious and/or uncomfortable and that it was a trigger for her anxiety.   Plaintiff was told by Michelle Welsby that she no longer had to listen to calls.  This was still prior to the submission of Plaintiff's medical documentation.

31.    Plaintiff also complained to Michelle Welsby that she was given a verbal (written up) for insubordination by Audrey Peterson.   Michelle Welsby said she did not see that information in her file.    Plaintiff explained that Audrey Peterson had not finished the documentation that was to be added to the file.

32.    On September 27, 2018, Plaintiff went to the doctor's appointment and met with the psychologist, Tonya Brawley, to have the documents provided by the company completed. Plaintiff had to leave the packet with her so that she could forward it to the psychiatrist, Dr. Handa.  Plaintiff checked with the VA a couple of times through in person visits to follow-up on the status of the package but each time it was not ready.

33.    In late September or early October 2018, after the conversation with Michelle Welsby, Plaintiff was told by Audrey Peterson that she was being written up for performance. Plaintiff questioned her write up and Audrey Peterson stated that they were changing her write up from insubordination to performance after speaking with HR.

34.    In October and November 2018, while at the appointment with the psychiatrist Dr. Handa, Plaintiff learned that Dr. Handa never received the paperwork from the psychologist, Tonya Brawley. Dr. Handa sent an email to Tonya Brawley inquiring about the paperwork. The paperwork was now missing but based on the information Plaintiff received from the company there was not a time limit to get the paperwork to them.

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

35.     In December 2018, Plaintiff sent an instant message to Kristi Wilder in tech support to follow up on an issue that she was having with her system which was causing her adherence and after call work numbers to increase. The aftercall work percentage measured the time from an employee ending one call and taking the next call. The desired range was 9 percent or less.  Adherence measured the time an employee logged into their system at the beginning of the day and the active calls they took until the end of the day. The desired percentage per day was 95%. Due to the reported system issue it effected the plaintiff's aftercall and adherence percentage.

36.     Plaintiff was told that most likely she was having the problem because of the recent changes to the system from ESD to CSP, which was the new system that was being implemented.  Tech support did not fix the problem.

37.     A few months prior to the report to tech support, Plaintiff had informed Audrey Peterson, her supervisor about this problem but it was not fixed.  Instead, she was told by Audrey Peterson that she had two weeks to improve her overall performance.  This included reducing the adherence and after call work numbers.

38.     On December 12, 2018, Plaintiff had an appointment with the psychologist, Tonya Brawley.  At the appointment she informed Plaintiff that she did not know where the original documents Plaintiff submitted were.  Instead, she completed the standard medical forms. Plaintiff asked her if it would be okay to submit these types of forms to her employer and was told yes because these are the forms that are used for all employers and that they had always been accepted.

39.     In December 2018, Plaintiff sent an email to HR asking for the fax number and then received a message back from either Elaine or Michelle.  In the email Plaintiff was asked

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

"Do you mean the fax number that was all over the paperwork that was sent to you, is that the fax number you are talking about?" Plaintiff was then given the fax number to submit the medical documentation.

40.     On December 13, 2018, Plaintiff faxed the FMLA paperwork and medical documentation to the third-party handling FMLA.  Plaintiff's FMLA request was approved from December 2018 until May 2019.

41.     On December 21, 2018, Plaintiff faxed the FMLA paperwork and medical documentation to Express Scripts.

42.     Even after submitting the FMLA and medical documentation to Express Scripts and their third party FMLA administrator, Plaintiff was still subjected to discrimination and hostile actions by her supervisor.

43.     On or about April 14 or 15, 2019, Plaintiff was threatened by Audrey Peterson that not improving her performance could lead to separation or termination.

44.     On April 16, 2019, Plaintiff was terminated from her employment with Express Scripts.

45.     Express Scripts could not find anything to fire Plaintiff for, so they changed the write ups from insubordination to performance.

46.     Throughout the time that Plaintiff was supervised by Audrey Peterson, she was subjected to her highs and lows and whatever mood she was in would be the basis of how she treated Plaintiff that day.

47.     Upon information and belief, there are different performance levels which include (Stretch, Target and Threshold).  Express Scripts in their position statement did not provide the EEOC with a definition of the performance levels.  Also, in their position statement, Express

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

Scripts essentially admitted that Audrey Peterson had an outburst and said that Plaintiff was being written up for insubordination but attempted to explain it away as she was "frustrated".

48.    In 2016 and 2017 Plaintiff was a "Target" which is over a hundred percent, that is why in those two years Plaintiff was never written up, or any time prior to that.  In 2018 and 2019 Plaintiff was at a "Threshold" which was slightly under a hundred percent.

49.    Upon information and belief, Plaintiff was not the only employee whose metrics were lower than in previous years. However, similarly situated employees with no disability were treated more favorably than Plaintiff in that they were not harassed, intimated or written up. Plaintiff's numbers were as good as or better than some other PCA's.

50.    Plaintiff felt that she was being harassed and discriminated against based on her disability; especially after Plaintiff informed her employer and supervisor of her condition and turned in FMLA paperwork and the harassment continued.

51.    While employed by Defendant, Plaintiff received accolades, bonuses, and raises for her work.  Since it was a virtual workplace accolades, praises and honors all came via Email, Instant Messages, or phone calls. The Plaintiff would collect monthly bonuses which were based on her performance, which would include attendance, adherence, number of calls handled, along with other facts.

52.    Plaintiff suffered discrimination in violation of the American's with Disabilities Act of 1990 as amended.

53.    After  Plaintiff filed a grievance and reported the discrimination to HR, she was subjected to retaliation including write ups, harassment, she was berated and belittled for her disability and was ultimately terminated as a retaliatory against in violation of Title VII of the Civil Rights Act of 1964 as amended.

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

## FIRST CAUSE OF ACTION
### (Disability Discrimination Under the Americans with Disabilities Act ("the ADA"))

54.    Plaintiff incorporates by reference and restates all prior allegations of this Complaint.

55.    Plaintiff has a disability within the meaning of the ADA, was regarded as having such a disability, and/or had a history of such a disability.

56.    At all times relevant to this Complaint, Plaintiff was a qualified individual able to perform the essential functions of her job as a Patient Care Advocate.

57.    Plaintiff's disability and/or medical condition was a determinative factor in Defendant's decisions to take adverse employment actions against Plaintiff, including 1) failing to accommodate Plaintiff's disability by allowing coaching without listening to prior calls, 2) closing Plaintiff's medical file prior to the time she could even get an appointment with her doctor/psychologist, 3) writing Plaintiff up for insubordination for not listening to calls that triggered her PTSD, 4) changing Plaintiff's write up alleging performance when in fact other PCA's were having a dip in their metrics for performance, due to some new protocols and changes in policy, and finally by 5) terminating Plaintiff.

58.    Defendant discriminated against Plaintiff based on her disability within the meaning of the ADA by taking such adverse employment actions for false and pretexual reasons.

59.    Defendant's discrimination against Plaintiff was a knowing and willful violation of the ADA, which entitles Plaintiff to punitive damages.

60.    As a direct result and consequence of Defendant's unlawful discrimination, Plaintiff has sustained and will suffer substantial financial damages, including lost wages and benefits.  Furthermore, Plaintiff has sustained and will suffer emotional distress, mental anguish,

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

inconvenience, and other compensatory damages.  Under the ADA, Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, reasonable attorney's fees, other expenses, and interest.

## SECOND CAUSE OF ACTION
### (Hostile Work Environment Under the Americans with Disabilities Act ("the ADA"))

61.    Plaintiff incorporates by reference and restates all prior allegations of this Complaint.

62.    Plaintiff is a member of a protected class in that she has a disability as defined by the ADA, was regarded as having such a disability, and/or had a history of such a disability.

63.    At all times relevant to this Complaint, Plaintiff was a qualified individual able to perform the essential functions of her job as a PCA.

64.    Nevertheless, Plaintiff became subjected to unwelcome harassment, including 1) failing to accommodate Plaintiff's disability by allowing coaching without listening to prior calls, 2) closing Plaintiff's medical file prior to the time she could even get an appointment with her doctor/psychologist, 3) writing Plaintiff up for insubordination for not listening to calls that triggered her PTSD, 4) changing Plaintiff's write up alleging performance when in fact some PCA's were having a dip in their metrics for performance, due to some new protocols and changes in policy, and finally by 5) terminating Plaintiff.

65.    Upon information and belief, these unwelcome harassments were based on Plaintiff's disability.

66.    These unwelcome harassments were so severe and pervasive as to alter the terms, conditions, or privilege of Plaintiff's employment and create an abusive working environment.

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

67.     To the extent that these unwelcome harassments constituted Defendant's knowing and willful violation of the ADA, Plaintiff is entitled to punitive damages.

68.     As a direct result and consequence of Defendant's unwelcome harassments of Plaintiff, Plaintiff has sustained and will suffer substantial financial damages, including lost wages and benefits.   Furthermore, Plaintiff has sustained and will suffer emotional distress, mental anguish, inconvenience, and other compensatory damages.  Under the ADA, Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, reasonable attorney's fees, other expenses, and interest.

### THIRD CAUSE OF ACTION
**(Wrongful Termination Under the Americans with Disabilities Act ("the ADA"))**

69.     Plaintiff incorporates by reference and restates all prior allegations of this Complaint.

70.     Plaintiff is a member of a protected class in that she has a disability as defined by the ADA, was regarded as having such a disability, and/or had a history of such a disability.

71.     At all times relevant to this Complaint, Plaintiff was a qualified individual able to perform the essential functions of her job as a PCA.

72.     Nevertheless, Defendant terminated Plaintiff under the circumstances which suggest that Plaintiff was subjected to Defendant's termination decision based on her disability.

73.     As a direct result and consequence of Defendant's decision to terminate Plaintiff, Plaintiff has sustained and will suffer substantial financial damages, including lost wages and benefits.  Furthermore, Plaintiff has sustained and will suffer emotional distress, mental anguish, inconvenience, and other compensatory damages.  Under the ADA, Plaintiff is entitled to back

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

pay, front pay, compensatory damages, punitive damages, reasonable attorney's fees, other expenses, and interest.

## FOURTH CAUSE OF ACTION
### (Failure to Provide a Reasonable Accommodation Under the ADA)

74.     Plaintiff incorporates by reference and restates all prior allegations of this Complaint.

75.     Plaintiff has a disability within the meaning of the ADA, was regarded as having such a disability, and/or had a history of such a disability.

76.     Plaintiff informed Defendant of her medical conditions and requested an accommodation for this condition which included not being required to listen to prior calls during coaching.

77.     There existed an accommodation available to Defendant that would have been effective to Plaintiff's situation and would not have posed an undue hardship to Defendant, *i.e.*, providing Plaintiff with coaching without her actually listening to the calls that triggered her PTSD.  This accommodation had in fact been in place by Defendant for years prior to Plaintiff being assigned to a new supervisor, Audrey Peterson.

78.     Plaintiff could perform all of the essential functions of her job and would have been able to continue with her coaching without listening to prior calls like she had been doing for several years prior to being placed with a new supervisor, Audrey Peterson.

79.     The accommodations sought by Plaintiff would not have posed an undue hardship on Defendant.

80.     Defendant failed to provide a reasonable accommodation for Plaintiff's disability. Instead, it discriminated against Plaintiff by taking adverse employment actions against her,

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

including 1) failing to accommodate Plaintiff's disability by allowing coaching without listening to prior calls, 2) closing Plaintiff's medical file prior to the time she could even get an appointment with her doctor/psychologist, 3) writing Plaintiff up for insubordination for not listening to calls that triggered her PTSD, 4) changing Plaintiff's write up alleging performance when in fact many PCA's were having a dip in their metrics for performance, due to some new protocols and changes in policy, and finally by 5) terminating Plaintiff.

81.    Defendant's failure to provide a reasonable accommodation for Plaintiff was a knowing and willful violation of the ADA, which entitles Plaintiff to punitive damages.

82.    As a direct result and consequence of Defendant's failure to provide a reasonable accommodation for Plaintiff's disability, Plaintiff has sustained and will suffer substantial financial damages including lost wages and benefits. Furthermore, Plaintiff has sustained and will suffer emotional distress, mental anguish, inconvenience, and other compensatory damages. Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, reasonable attorney's fees, other expenses, and interest.

### FIFTH CAUSE OF ACTION
**(Retaliation Discrimination Under the ADA and or Title VII of the Civil Rights Act)**

83.    Plaintiff incorporates by reference and restates all prior allegations of this Complaint.

84.    When Plaintiff requested a reasonable accommodation for her disability and opposed and/or complained about Defendant's failure to provide a reasonable accommodation for her disability, and complained about the hostile work environment she was receiving for requesting the accommodation and filing a grievance, she engaged in a protected activity under the ADA and/or Title VII of the Civil Rights Act.

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828

85.     In responding to Plaintiff's request for a reasonable accommodation for her disability and her opposition to and/or complaint about Defendant's discriminatory employment practice, Defendant took adverse employment actions against Plaintiff including 1) failing to accommodate Plaintiff's disability by allowing coaching without listening to prior calls, 2) closing Plaintiff's medical file prior to the time she could even get an appointment with her doctor/psychologist, 3) writing Plaintiff up for insubordination for not listening to calls that triggered her PTSD, 4) changing Plaintiff's write up alleging performance when in fact some PCA's were having a dip in their metrics for performance, due to some new protocols and changes in policy, and finally by 5) terminating Plaintiff.

86.     As a direct result and consequence of Defendant's retaliatory adverse employment action, Plaintiff has sustained and will suffer substantial financial damages including lost wages and benefits.  Furthermore, Plaintiff has sustained and will suffer emotional distress, mental anguish, inconvenience, and other compensatory damages.  Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, reasonable attorney's fees, other expenses, and interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that judgment be entered in her favor against Defendant as follows:

1.     Actual, compensatory, and special damages in an amount to be determined, including but not limited to back pay, front, pay, anxiety, emotional distress, inconvenience, loss of enjoyment of life.

2.     Punitive damages under the ADA and/or Title VII in an amount adequate to punish Defendant for its reckless behavior and sufficient to deter it and others from similar conduct in the future.

3.     Attorney's fees, costs, and interest; and

4.     Such other and further relief as this Court and jury deem just and proper.

**JORDAN LAW FIRM, P.C.**
*s/D. Bradley Jordan*
D. Bradley Jordan (SC Bar #15288)
bradjordan@comporium.net
546 East Main Street
Rock Hill, SC 29730
(803) 817-7999 (Tel) / (803) 817-9704 (Fax)

**ATTORNEY FOR PLAINTIFF**

June 6, 2020

Rock Hill, South Carolina

ELECTRONICALLY FILED - 2020 Jun 10 3:32 PM - YORK - COMMON PLEAS - CASE#2020CP4601828